COMMONWEALTH of Pennsylvania,
Appellant,

v.

George RIPLEY, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Calyn Arnold, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Alexis Badenmayer, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Curtis Dahn, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Mark Debrew, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Paul B. Osher, Appellee.

Superior Court of Pennsylvania.

Argued March 11, 2003.
Filed Sept. 18, 2003.

Emil Kiehne, Asst. Dist. Atty., Philadelphia, for Com., appellant.

George Ripley, appellee, pro se.

Paul M. George, Public Defender, Philadelphia, for Arnold, appellee.

Alexis Badenmayer, appellee, pro se.

James T. Marsh, Philadelphia, for Dahn, appellee.

Albert J. Raman, Philadelphia, for Debrew, appellee.

Aaron C. Finestone, Philadelphia, for Osher, appellee.

BEFORE: DEL SOLE, P.J., GRACI and BECK, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 The Commonwealth appeals from the order granting Appellees' motion to quash. Upon review, we reverse.

¶ 2 The trial court summarized the procedural history of this case as follows:

Defendants Calyn Arnold, Alexis Badenmayer, Curtis Dahn, Mark Debrew, Paul B. Osher, and George Ripley were charged with Possession of Instruments of Crime, Obstructing the Administration of Law or Government, Disorderly Conduct, Obstructing the Highway and Conspiracy. The charges stem from a protest at the Republican National Convention in Philadelphia in which the defendants attempted to impede delegates from reaching the First Union Center.

On Friday, February 2, 2001, a trial was held without a jury before the Honorable Seamus P. McCaffery in the Municipal Court of Philadelphia. The defendants were each found guilty of Possession of Instruments of Crime, Conspiracy to Obstruct Justice, Conspiracy to Commit Disorderly Conduct, and Conspiracy to Obstruct the Highway. Ms. Arnold, Mr. Osher, Ms. Badenmayer, Mr. Ripley, and Mr. Debrew were sentenced to time in to one year [sic], and mandatory court costs. The court ordered immediate non-reporting parole. Mr. Dahn was sentenced to sixteen days to one year with the same mandatory costs and parole.

An appeal for a trial *de novo* was filed in this Court. Defendants Arnold and Debrew, joined by the remaining defendants, directly filed a motion to quash. On November 21, 2001, this Court granted the motion to quash. After timely filing its Notice of Appeal, the Commonwealth was ordered, pursuant to Pa.R.A.P. 1925(b), to file a Statement of Matters Complained of on Appeal. In its statement, the Commonwealth claims that there was sufficient evidence to establish a prima facie case for all charges at the preliminary hearing, and that this Court erred in its grant of defendant's Motion to Quash.

Trial Court Opinion, 6/28/02, at 1–2.

¶ 3 On appeal, the Commonwealth presents two issues for our review:

1. Did the lower court lack jurisdiction to grant defendants' pre-trial motions to quash the bills of information that were filed after they chose to be tried *de novo?*

2. Did the Municipal Court trial transcript contain sufficient evidence for a prima facie case of possession of an instrument of crime, conspiracy to obstruct justice, conspiracy to commit disorderly conduct, and conspiracy to obstruct the highway, such that the court below erred in quashing these charges?

Appellant's Brief at 4.

¶ 4 The Commonwealth first argues that the trial court lacked jurisdiction to grant Appellees' motions to quash. Appellant's Brief at 15. The Commonwealth asserts that where a defendant appeals from a municipal court conviction for a trial *de novo*, the Common Pleas Court has no statutory jurisdiction to entertain a pretrial motion to quash bills of information based on a review of the record. *Id.* It reasons the trial court's ability to hold *de novo* trials results from its appellate jurisdiction and not its original jurisdiction, and thus, in its capacity as an appellate court, the trial court does not have jurisdiction to entertain a motion to quash. *Id.* at 16—17.

¶ 5 First we must note that this case was first tried in Philadelphia Municipal Court. Jurisdiction for this Court is set by statute. Section 1123 of the Judicial Code provides, in pertinent part, as follows:

§ 1123. Jurisdiction and venue

(a) General rule.—Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), the Philadelphia Municipal court shall have jurisdiction of the following matters:

* * *

(2) Criminal offenses by any person (other than a juvenile) for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years, including indictable offenses under Title 75 (relat-

ing to vehicles). In cases under this paragraph the defendant shall have no right of trial by jury in the municipal court, but shall have the right of appeal for trial *de novo*, including the right of trial by jury, to the court of common pleas. The judges of the municipal court exercising jurisdiction under this paragraph shall have the same jurisdiction in probation and parole arising out of sentences imposed by them as judges of the court of common pleas.

42 Pa.C.S.A. § 1123. Not only does this statute provide for jurisdiction of the Municipal Court in cases where charges are such as those in this matter, this provision provides for appeal for a trial *de novo* to the Court of Common Pleas. Section 932 of the Judicial Code provides:

Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), each court of common pleas shall have exclusive jurisdiction of appeal from final orders of the minor judiciary established within the judicial district.

42 Pa.C.S.A. § 932. Additionally, section 934 of the Code provides:

Unless and until changed by general rule, the judges of the courts of common pleas, within their respective judicial districts, shall have power, in addition to the right of appeal under section 9 of Article V of the Constitution of Pennsylvania, to issue writs of certiorari to the minor judiciary.

42 Pa.C.S.A. § 934.

¶ 6 Accordingly, there are two means of appealing a municipal court determination in Philadelphia. An individual may seek a trial *de novo* or file a writ of *certiorari*. Whereas the petition requests that the common pleas court review the record made in the municipal court, the appeal *de*

*novo* gives the defendant a new trial without reference to the record established in the municipal court. *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263, 1264, n. 2 (1986).

¶ 7 Here, Appellees sought a trial *de novo*. After seeking a trial *de novo*, Appellees filed a motion to quash on the basis that the Commonwealth had not established a *prima facie* case of the charges. Despite the Commonwealth's argument that the trial court had no jurisdiction to grant this motion, we conclude that a trial court, following an appeal for a trial *de novo* from a municipal court determination, has jurisdiction to hear and rule on a motion to quash. *See Commonwealth v. Nelson,* 230 Pa.Super. 89, 326 A.2d 598 (1974) (trial court order granting motion to quash filed following *de novo* appeal from municipal court conviction affirmed in part and reversed in part by Superior Court). We find further support for this determination in Rule 1010 of the Rules of Criminal Procedure, which provides that where a defendant appeals for a trial *de novo*, "[t]he attorney for the Commonwealth, upon receiving the notice of appeal shall prepare an information and the matter shall thereafter be treated in the same manner as any other court case."

¶ 8 Furthermore, we do not find Chapter 10 of the Pennsylvania Rules of Criminal Procedure to preclude review of the municipal court proceeding to determine whether a *prima facie* case has been established in ruling on the motion to quash. Rule 1012 provides in pertinent part:

(B) No testimony produced at the Municipal court trial or at any pretrial hearing in the Municipal Court shall be admissible at the trial *de novo* except in those cases in which defendant was represented by counsel and had the opportunity to cross examine, and the witness afterwards dies, or is out of the jurisdiction so that the witness cannot be effectively served with a subpoena, or cannot be found, or becomes incompetent to testify for any legally sufficient reason properly provided.

Pa.R.Crim.P. 1012. While testimony produced at the municipal court proceeding cannot generally be introduced at a trial *de novo* pursuant to this Rule, the record produced at the municipal court proceeding can be considered to determine whether a *prima facie* case exists. Therefore, we hold that the trial court had the authority to consider the motion to quash based on a review of the Municipal Court record.

¶ 9 The Commonwealth argues in the alternative, that should it be determined that the trial court had jurisdiction to grant the motion to quash, then the evidence presented at the municipal court proceeding establishes a *prima facie* case of the charges at issue and the trial court erred in granting the motion to quash. Appellant's Brief at 23. The decision to grant a motion to quash a criminal information or indictment "is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion." *Commonwealth v. Lebron,* 765 A.2d 293, 294 (Pa.Super.2000). Discretion is abused when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Lebron,* 765 A.2d at 294–295.

¶ 10 As stated, the trial court had jurisdiction to entertain the motion to quash, and accordingly it was then required to determine whether a *prima facie* case of the charges had been established. The *prima facie* standard requires that

the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence as to the existence of a material element is fatal. *Commonwealth v. Austin,* 394 Pa.Super. 146, 575 A.2d 141, 143 (1990). This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt. *Austin,* 575 A.2d at 143.

¶ 11 When reviewing a motion to quash on the basis of failure to establish a *prima facie* case, the trial court looks to the evidence presented at the preliminary hearing. See *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589 (1991). While there was no preliminary hearing here, this Court has stated that in this situation, the municipal court hearing serves as the preliminary hearing. *Commonwealth v. Nelson,* 230 Pa.Super. 89, 326 A.2d 598 (1974). Accordingly, in order to determine whether the Commonwealth established a *prima facie* case, we must review the evidence presented at the municipal hearing.

¶ 12 A person is guilty of possession of an instrument of crime if he or she "possesses any instrument of crime with intent to employ it criminally." 18 Pa. C.S.A. § 907(a). An instrument of crime includes "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d)(1) & (2), *see also Commonwealth v. Magliocco,* 806 A.2d 1280 (Pa.Super.2002), *appeal granted,* 573 Pa. 683, 823 A.2d 144 (2003). The evidence showed that Appellees possessed lock boxes that were specially made for the criminal purpose of blockading the intersection of 12th and Arch Streets. There was testimony that there was discussion and agreement among the protestors to use the lock boxes to physically link the protestors together to create a human chain to be used to block the intersection. This intended protest involved various criminal violations. Furthermore, evidence revealed that these devices were in the van with Appellees when they were arrested. Accordingly, we find that the Commonwealth established a *prima facie* case for this charge.

¶ 13 Appellees were also convicted of conspiracy to obstruct justice, conspiracy to commit disorderly conduct, and conspiracy to obstruct the highway. Criminal conspiracy is defined as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. A conspiracy conviction requires proof of: (1) an intent to commit or aid in an unlawful act; (2) an agreement with a co-conspirator; and (3) an overt act in furtherance of the conspiracy. *Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1162 (2000). An agreement may be inferred from the acts and circumstances of the parties. *Commonwealth v. Dumas,* 299 Pa.Super. 335, 445 A.2d 782, 786 (1982).

¶ 14 A person is guilty of the crime of obstructing administration of law or other governmental function if he "... intentionally obstructs, impairs or perverts the ad-

ministration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act ...." 18 Pa. C.S.A. § 5101.[1]

¶ 15 There was evidence that Appellees entered into an agreement to conduct the lock-down protest. This conduct would result in obstruction of the administration of law or other governmental function because Appellees intended to physically obstruct lawful police efforts to ensure that public streets were free from obstruction and open for safe use by cars and pedestrians. This intent is indicated by the Appellees' design and intended use of the lock-boxes, which were to physically link the protestors together and interfere with police efforts to disperse the protest. Furthermore, Appellees covered the lock-boxes in tar and chicken wire, for the sole purpose of slowing down police efforts to disassemble the human chain. Thus, we find the Commonwealth established a *prima facie* case of this charge.

¶ 16 A person is guilty of disorderly conduct if:

... [w]ith intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503. The evidence presented at the municipal proceeding estab-

lished a *prima facie* case of the elements of this crime. It was established that the Appellees agreed to and intended to cause public inconvenience, annoyance or alarm, or recklessly create a risk thereof, by planning to obstruct the intersection. Further, there is evidence that this conduct would have created a hazardous or physically offensive condition. Activity serving a legitimate purpose has been interpreted to mean conduct which is lawful and constitutionally protected. *Commonwealth v. Roth*, 366 Pa.Super. 575, 531 A.2d 1133, 1137 (1987). We are unconvinced that Appellees' plan to blockade the intersection can be characterized as being either lawful or constitutionally protected. Additionally, evidence established the overt action Appellees took in furtherance of this conspiracy. Thus we find that the trial court erred in concluding that the Commonwealth failed to establish a *prima facie* case of this charge.

¶ 17 The crime of obstructing highways and other public passages is defined as follows:

(a) Obstructing.—A person, who, having no legal privilege to do so, intentionally or recklessly obstructs any highway, railroad track or public utility right-of-way, sidewalk, navigable waters, other public passage, whether alone or with others, commits a summary offense, or in case he persists after warning by a law officer, a misdemeanor of the third degree.

18 Pa.C.S.A. § 5507. Evidence established that Appellees had entered into an agreement to obstruct the roadway in Philadelphia, thereby keeping citizens from passing freely. Appellees took overt action in furtherance of this goal by planning the blockade, gathering necessary material

---

**1.** In its opinion, the trial court identifies the obstructing justice charge as 18 Pa.C.S.A. § 5102. Review of the record indicates, however, that the Appellees were charged with violations of 18 Pa.C.S.A. § 5101.

for the blockade and traveling to the planned site of the protest with the material to be used for the blockade. The Commonwealth has indeed established a *prima facie* case of this violation. Therefore, we conclude that the trial court abused its discretion in granting the Appellees' motion to quash.

¶ 18 Order reversed. Matter remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 19 GRACI, J. files a concurring opinion.

CONCURRING OPINION BY GRACI, J.:

¶ 1 I agree with the majority that the trial court erred in concluding that the Commonwealth had failed to make out a *prima facie* case against the Appellees and join the opinion to the extent that it reverses the order granting the motion to quash the informations filed against them. I am unable, however, to join the majority's discussion of the first issue raised by the Commonwealth as Appellant since I believe that the Commonwealth waived that issue by failing to include it in its statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 1925(a). Contrary to the argument of the Commonwealth, this claim is not jurisdictional. The Philadelphia Court of Common Pleas clearly had the jurisdiction or competency to enter the order appealed from in this case although it may have lacked the power or authority to do so. As this is a question of power, rather than subject matter jurisdiction, this claim had to be raised in the Appellant's Rule 1925(b) statement. Since it was not, it is waived. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998).

¶ 2 There is no doubt that questions of subject matter jurisdiction may be raised by the parties at any time or *sua sponte* by the appellate court. *Riedel v. Human Relations Commission of City of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999). As the Court observed in *Riedel*, however:

> Jurisdiction and power are not interchangeable although judges and lawyers often confuse them. Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Id.* (citations omitted). *See also Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 737 (2001) (same; citing *Riedel* ).

¶ 3 We have previously had occasion to describe the jurisdiction of the Court of Common Pleas of Philadelphia County to review the decisions of the Philadelphia Municipal Court in the following manner:

> [T]he common pleas court has jurisdiction to review an order of the municipal court, under both 42 Pa.C.S.A. § 932 and § 1123(a)(2). Section 932 addresses appeals from final orders to the courts of common pleas from minor judiciary determinations, in general.

> **§ 932. Appeals from minor judiciary**

> Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), each court of common pleas shall have exclusive jurisdiction of appeals from final orders of the minor judiciary established within the judicial district.

> 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

> Section 1123 defines the jurisdiction and venue of the Philadelphia Municipal

Court, specifically, and sets out in subsection (a)(2) the particular type of appellate review available to defendants following final determinations in municipal court.

### § 1123. Jurisdiction and venue

(a) General rule.—Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), the Philadelphia Municipal Court shall have jurisdiction of the following matters:

. . .

(2) ... In cases under this paragraph the defendant shall have no right of trial by jury in the municipal court, but shall have the right of appeal for trial de novo, including the right of trial by jury, to the court of common pleas.

*See Commonwealth v. White*, 228 Pa.Super. 23, 324 A.2d 469 (1974).

In *Commonwealth v. Poindexter*, 248 Pa.Super. 564, 375 A.2d 384 (1977), this court further recognized in a footnote that appeal may also be sought from municipal court to common pleas by the issuance of a Writ of Certiorari.

Section 26 of the Schedule to Article 5 of the Pennsylvania Constitution provides: 'Unless and until changed by rule of the Supreme Court, in addition to the right of appeal under section nine of this article, the judges of the courts of common pleas ... shall have power to issue writs of certiorari to the municipal court in the City of Philadelphia....' Although the Supreme Court, by Pennsylvania Rule of Criminal Procedure 159(e), has suspended the Act of Dec. 2, 1968, P.L. 1137, No. 355, § 6, 42 P.S. § 3006, the act which previously authorized courts of common pleas to issue writs of certiorari to minor judiciary courts, the Supreme Court has not specifically abolished certiorari. We must therefore assume that the courts of common pleas retain the power to issue writs of certiorari to the Philadelphia Municipal Court in non-summary criminal cases.

*Id.* at 567, 375 A.2d at 386.

In sum, the nature and scope of the review by the court of common pleas of orders entered by the municipal court is carefully delineated by statute.

*Commonwealth v. Rosario*, 419 Pa.Super. 481, 615 A.2d 740, 742 (1992).

¶ 4 The Pennsylvania Supreme Court has recently addressed the subject of subject matter jurisdiction and has reiterated:

Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. Appellee was charged with violations pursuant to the Crimes Code. Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code.

*Commonwealth v. Bethea*, —— Pa. ——, 828 A.2d 1066, 1074 (2003) (citations omitted).

¶ 5 Thus it clearly appears that the Philadelphia Court of Common Pleas was competent to determine the issues before it in these criminal cases. The general class to which these cases belong is that arising under the Crimes Code as in *Bethea*. The Philadelphia Court of Common Pleas

clearly is competent to determine such controversies. *Bethea.*[2]

¶ 6 It may be that the Commonwealth is correct that the common pleas court lacked the authority or power to entertain a motion to quash the informations on the basis that there was no *prima facie* case on an appeal for *de novo* trial. That is a question separate and apart from the court's competency or jurisdiction to decide issues raised in criminal cases as the cases cited above make clear. The issue of the court's power or authority had to be properly raised and preserved in the Rule 1925(b) statement for it to be considered on appeal. *See Riedel v. Human Relations Commission of City of Reading,* 739 A.2d at 124 (since issue was not jurisdic-

tional, appellate court improperly raised it *sua sponte* and since claim was not raised in trial court it was waived under Pa. R.A.P. 302). Since the Commonwealth failed to state this issue in its Rule 1925(b) statement it is waived under *Lord* and we may not consider it. Accordingly, I would leave for another day the question of whether a defendant who is convicted in the Philadelphia Municipal Court may, on the basis of the Commonwealth's failure to establish a *prima facie* case, file a motion to quash[3] the informations filed in the Philadelphia Court of Common Pleas when the defendant seeks a trial *de novo.*

¶ 7 Though I am unable to join the majority in this portion of its Opinion, I hasten to join its proper resolution of the

2. The division of labor in the City of Philadelphia between the Court of Common Pleas and the Municipal Court is of no consequence to the question of the jurisdiction or competency of the common pleas court. Despite that division, the General Assembly has provided that the

> Court of Common Pleas of Philadelphia County shall have concurrent jurisdiction over the matters specified in 42 Pa.C.S.[A.] § 1123(a)(2) (relating to jurisdiction and venue) and the assignment of cases between the two courts shall be determined by rule prescribed by the President Judge of the Court of Common Pleas of Philadelphia County.

Section 10 of Act 1976, July 9, P.L. 586, No. 142, as affected by Act 1982, Dec. 20, P.L. 1409, No. 326, § 316, 42 P.S. § 20076. The Commonwealth places substantial reliance on the grant of jurisdiction in section 1123(a)(2) without recognizing the grant of concurrent jurisdiction made by the above-quoted enactment. While the order here at issue may have been entered in violation of a rule prescribed by the President Judge of the Court of Common Pleas of Philadelphia County (an issue we need not decide), it was certainly not issued by a court lacking subject matter jurisdiction.

3. Though denominated a "motion to quash," the courts of the Commonwealth have regu-

larly recognized that the true nature of a motion challenging the sufficiency of the Commonwealth's evidence in failing to establish a *prima facie* case is a request for habeas corpus relief. *Commonwealth v. Hess,* 489 Pa. 580, 414 A.2d 1043 (1980); *Commonwealth v. Burkett,* 352 Pa.Super. 350, 507 A.2d 1266, n. 1 (1986) (same, citing *Hess* ); *Commonwealth v. Stein,* 363 Pa.Super. 410, 526 A.2d 411, 413 (1987) (same, citing *Hess* ). While I do not think that this issue is properly before us for the reasons set forth in text, I must take issue with the majority's reliance on *Commonwealth v. Nelson,* 230 Pa.Super. 89, 326 A.2d 598 (1974), for the conclusion "that a trial court, following an appeal for a trial *de novo* from a municipal court determination, has jurisdiction to hear and rule upon a motion to quash." Opinion, at 159. To be sure, the common pleas court in *Nelson* ruled upon (and granted) a motion to quash after an appeal for a trial *de novo.* At issue, however, was not whether the Commonwealth had established a *prima facie* case. Instead, the court had to determine if the Commonwealth could indict on an additional charge after the case had been appealed from the municipal court. We concluded that the common pleas court had that authority. Whatever the worth of the *Nelson* opinion, I do not believe that it provides any guidance on the question before the Court in this appeal (which I believe is waived).

remainder of the case and, therefore, concur in the majority's result.